STATE, CORNELIUS B. GAGE, PROSECUTOR, v. CHARLES T. CLARK.

Justices of the peace are county officers within the purview of sections 100-115 of "an act to regulate elections." *Rev., p.* 355.

On *certiorari.*

Argued at June Term, 1888, before Justices DEPUE, VAN SYCKEL and DIXON.

For the prosecutor, *Mahlon Pitney.*

For the defendant, *W. W. Cutler.*

The opinion of the court was delivered by

DIXON, J.    This *certiorari* brings up the proceedings taken in the Morris County Circuit Court to contest the election of Cornelius B. Gage as a justice of the peace at the last annual town meeting in Randolph township, in Morris county.    The sole ground of the prosecutor's objection to those proceedings is that the office of justice of the peace is not "a county, township or city office," within the purview of sections 100–115 of the act to regulate elections (*Rev., p.* 355), and, therefore, the Circuit Court has no jurisdiction of the contest by virtue of said statute.

The counsel for the prosecutor insists that justices of the peace are not county or township officers, but are *state* officers, because they are commissioned by the governor, give bond to

the state, are liable to impeachment, constitute no part of the local government, are subject to local supervision or control only to a very limited extent, are not salaried out of the local treasury, and, for certain purposes, may confer authority to be exercised beyond the local boundaries.

Conceding the truth of all these reasons, they do not maintain the position of counsel that justices of the peace are not within the terms of the act, for these reasons are all equally true of sheriffs ; and yet, in the fifty-first section of the same statute, sheriffs are plainly referred to as "county officers." "All civil officers under the state," not merely those selected to administer the government of the state, are liable to impeachment; "all civil officers elected or appointed pursuant to the provisions of the constitution" are commissioned by the governor, and clerks, surrogates and sheriffs of the several counties, as well as justices of the peace, give bond to the state. It is not from such considerations that the true sense of the terms of this enactment can be ascertained. If we look to the body by which justices of the peace are chosen, they should be deemed township officers, but if we look to the general scope of their official functions, they should be classed with sheriffs, surrogates and county clerks, as county officers.

The most reliable index, however, of the sense in which the legislature used the phrase "county, township or city officers" in this statute, is the common meaning of such terms in previous legislation, and an examination of this will, I think, make it manifest that justices of the peace are included among county officers.

In the first session of the Colonial General Assembly, after the surrender to Queen Anne, these officers are styled "Her Majesty's justices of the peace of the county" (*Allinson, p.* 3), and in the statutes from that time to the present, whenever they are mentioned with any local addition, the reference is almost invariably to the county. The instances are of course too numerous for citation.

The constitution of 1844 directs that justices of the peace shall be commissioned for the county (art. VII., § 2, ¶ 8),

and in the acts organizing new counties, within the last half ·century, they are always referred to as " officers of the county," or " county officers." Thus, in the acts creating the county ·of Passaic and the county of Atlantic (*Pamph. L.* 1837, *p.* ·96, § 6); the county of Mercer (*Pamph. L.* 1838, *p.* 209, § ·3); the county of Hudson (*Pamph. L.* 1840, *p.* 65, § 3), and ·the county of Union (*Pamph. L.* 1857, *p.* 244, § 3), the justices of the peace of the old counties, residing within the limits of the new counties, are required to take oath " as offi- ·cers of the new counties ; " and in the acts creating the county ·of Camden (*Pamph. L.* 1844, *p.* 237, § 3), and the county of Ocean (*Pamph. L.* 1850, *p.* 73, § 4), we find the classification ·of " justices of the peace and all other county officers."

This form of expression, used so frequently and for so long ·a period, renders it certain that, in legislative terminology, ·county officers include justices of the peace.

A further argument is presented by counsel for the prose- ·cutor, based upon the provisions of section 111 of the statute, to the effect that a successful contestant shall be " entitled to his certificate," and "the certificate of election" of the defeated incumbent shall be annulled. Counsel contends that these ·provisions are inapplicable to justices of the peace, because they do not receive certificates of election, and, therefore, these offi- ·cers are not embraced in any part of the law.

But we think this conclusion is too broad for the premise. The formal annulment of an old certificate and granting of a new one are quite unimportant for any useful object at which the law aimed. It would be an unreasonable interpretation ·of the statute to confine its substantial enactments within the limits of these purely formal provisions. It is much more rational to assume that the legislature intended to give full effect to what was important, and overlooked the fact that what was in all cases immaterial was also sometimes inapt.

In our judgment, the Circuit Court had jurisdiction of the ·contest, and the record should be remitted to that court in ·order that it may proceed thereon according to law.

The defendant in *certiorari* is entitled to costs.